IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| JAMES NEIRA, § | |
| Reg. No. 14812-480, § | |
| Movant, § | |
| § | **EP-21-CV-134-KC** |
| v. § | **EP-18-CR-2399-KC-1** |
| § | |
| UNITED STATES OF AMERICA, § | |
| Respondent. § | |

## MEMORANDUM OPINION AND ORDER

James Neira seeks relief from his sentence through a pro se motion under 28 U.S.C. § 2255.  Mot. to Vacate, ECF No. 91.[1]  His Motion is opposed by Respondent United States of America (the Government).  Gov't's Resp., ECF No. 95.  His Motion, after due consideration, is **DENIED**.

## BACKGROUND AND PROCEDURAL HISTORY

Neira is a 46-year-old federal prisoner serving a 192-month sentence for drug trafficking. J. Crim. Case 2, ECF No. 75.  He is confined at the Federal Correctional Institution in Phoenix, Arizona.  Bureau of Prisons, Inmate Locator, https://www.bop.gov/inmateloc/ (search for Reg. No. 14812-480) (last visited Aug. 23, 2021).  His projected release date is April 2, 2034.  Id.

On December 25, 2017, federal agents observed a Dodge Durango with Neira inside cross the international border from El Paso, Texas, into Juarez, Mexico, and return to the United States.  Am. Plea Agreement 9, ECF No. 65.  On January 5, 2018, they stopped the same Durango at the border and searched it for contraband.  Id.  They discovered 2.54 kilograms of 97 percent pure methamphetamine concealed inside under a non-factory trap door located near the

---

[1] "ECF No." refers to the Electronic Case Filing ("ECF") number for documents docketed in EP-18-CR-2399-KC-1. Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

engine. Id. They also conducted a forensic download of the driver's cellular phone and found it contained messages from Neira. Am. Addendum 6, ECF No. 66. They learned from the driver that Neira had recruited her to transport the methamphetamine. Id.

A grand jury indicted Neira for conspiracy to import more than 500 grams of methamphetamine (count one) and conspiracy to possess with intent to distribute more than 500 grams of methamphetamine (count two). Indictment, ECF No. 3.

Neira's attorney, Richard L. Jewkes, successfully negotiated a plea agreement. Am. Plea Agreement, ECF No. 65. Under its terms, Neira agreed to (1) plead guilty to count two of the indictment, (2) waive his right to additional discovery, and (3) waive his right to collaterally attack his sentence except when his challenge was based on the ineffective assistance of his counsel or prosecutorial misconduct. Id. at 1, 4. He also admitted to the detailed factual basis—as alleged by the Government in both the amended plea agreement and an amended addendum to the plea agreement—was true and correct. Id. at 6, 9; Am. Addendum. 6, ECF No. 66. In exchange for his plea, the Government agreed to move to dismiss count one at the time of his sentencing. Am. Plea Agreement 1. In the addendum to the plea agreement, the parties also agreed "to make a non-binding sentencing recommendation to the Court . . . pursuant to [Federal Rule of Criminal Procedure] 11(c)(1)(B) . . . of one hundred and ninety-two (192) months." Am. Addendum 5, ECF No. 66.

At his plea hearing, Neira was first sworn to tell the truth and then he engaged in the following exchange with the Court:

> THE COURT: . . . Have you had plenty of time to discuss this case and everything related to it with Mr. Jewkes?
> THE DEFENDANT: Yes, sir.
> . . . .
> THE COURT: Mr. Neira, are you completely satisfied with the assistance that your lawyer, Mr. Jewkes, has provided to you in connection with this case?

>THE DEFENDANT: Yes, sir.
>THE COURT: Mr. Jewkes is a newly appointed lawyer, you having expressed dissatisfaction with the relationship that you had with Mr. Velarde. Have you been able to assure yourself that you are familiar with all of the information relating to your case given you have now been represented by Mr. Jewkes in this case?
>THE DEFENDANT: Yes, sir.
>THE COURT: To the extent there was any shortcoming on the part of Mr. Velarde which you believe existed, and the Court made no determination of, has Mr. Jewkes been able to answer every question that you have about this case?
>THE DEFENDANT: Yes, sir.
>THE COURT: And explain every charge that exists in this case?

Plea Tr. 4, 14–15, ECF No. 85. Neira then discussed with the Court his understanding of the contents and impact of the plea agreement:

>THE COURT: By signing the plea agreement, you're waiving your right to receive any more information from the Government by way of discovery.
>Do you understand that?
>THE DEFENDANT: Yes, sir.
>. . . .
>THE COURT: Additionally, you're indicating you are satisfied with the assistance that you have received from your lawyer, and you believe your lawyer, Mr. Jewkes, has provided you with competent representation.
>Do you understand that to be part of the plea agreement?
>THE DEFENDANT: Yes, sir.
>. . . .
>THE COURT: Did you sign the plea agreement in your case freely and voluntarily?
>THE DEFENDANT: Yes, sir.
>THE COURT: Before signing the document, did you read it to yourself?
>THE DEFENDANT: Yes, sir.
>THE COURT: Did you have any difficulty reading and comprehending English?
>THE DEFENDANT: No.
>THE COURT: Did your lawyer review it with you?
>THE DEFENDANT: Yes, sir.
>THE COURT: Did he answer any questions you may have had about it?
>THE DEFENDANT: Yes, sir.
>THE COURT: Are you completely satisfied when you executed your signature you were familiar with all the contents of the document?
>THE DEFENDANT: Yes, sir.

Id. at 31, 33, 34–35. Neira also acknowledged that he was freely and voluntary entering his plea:

3

>THE COURT: Has anybody forced you to enter a plea of guilty in this case against your will?
>THE DEFENDANT: No, sir.
>THE COURT: Has anybody threatened you or pressured you to plead guilty in this case against your will?
>THE DEFENDANT: No, sir.
>THE COURT: Mr. Neira, at the end of the hearing I will invite you to enter a plea of your choice. It can be a plea of not guilty or a plea of guilty. Will you promise me whatever plea you enter at the end of the hearing that you will enter the plea freely and voluntarily?
>THE DEFENDANT: Yes, sir.

Id. at 15. Neira also listened and claimed he understood as the Court advised him of the statutory maximum penalty he faced:

>THE COURT: . . . There is a mandatory minimum term of imprisonment of ten years, and it could be technically up to the rest of your natural life, you may be required to pay a fine anywhere between 0 and up to but never more than $10 million, you may be placed under the supervision of the Court should you be convicted of the offense for a minimum period of five years up to the end of your natural life, and you may be required to pay a sum of money that would go to the Crime Victims Fund, and that would be anywhere between 0 and up to but never more than $100.
>Do you understand all of that?
>THE DEFENDANT: Yes, sir.

Id. at 17–18. Neira agreed with the factual summary presented by the Government. Id. at 36–37. Specifically, he admitted that "he knowingly and intentionally conspired with others to possess with intent to distribute 500 grams or more of a mixture or substance containing . . . 2.54 kilograms in gross weight of methamphetamine. Id. at 37. And Neira discussed what he perceived was a confrontation with a marshal immediately before the plea hearing:

>THE COURT: I think you were indicating that at some point while you were in the cell block that one or possibly more of the marshals came at you. Is that correct?
>THE DEFENDANT: Yes, sir.
>THE COURT: If you will explain that to me again slowly, and I want to understand exactly what you are telling me.
>THE DEFENDANT: I was sitting there. The marshal -- I don't know his name --

4

> THE COURT: You were sitting in the cell block on the sixth floor adjacent to my courtroom?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Okay.
>
> THE DEFENDANT: He called my name. I said I am right here. He called another inmate's name, same thing. Get up, let's go. I said okay, and I got up. He looked at me and said what, do you have a problem? I said no. First, I didn't know what he was talking about.
>
> . . . .
>
> THE COURT: Is it the marshal in the back of you or the marshal to your left side?
>
> THE DEFENDANT: Behind me.
>
> THE COURT: Go ahead with your story, please.
>
> THE DEFENDANT: I just said no, I don't have a problem. He said if you have a problem, we will take care of this right now. I don't have a problem. I was cold, and I came out of the cell. He said take your hands out of -- he said do you have a problem, we'll take care of it. I am walking away, you're harassing me. I just woke up. I don't know what the deal is here.
>
> THE COURT: Did he in any way touch you or assault you in any way?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: It was the verbal exchange that you found unpleasant?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Would you like to take some time before we continue with this hearing so that whatever effect that conversation had is something that won't be troublesome to you during the hearing?
>
> THE DEFENDANT: No. I am worried what is going to happen afterwards. I want to know why.
>
> THE COURT: I am not a prophet, and I can't predict the future. My guess is he is going to be just fine with you afterwards. I don't know what provoked that to be honest with you. I heard your side of the story. I will visit with the marshal a little later.
>
> You're doing okay right now?
>
> THE DEFENDANT: I am okay.
>
> . . . .
>
> THE COURT: Do you want to continue with the hearing or would you like to take a recess before we continue?
>
> THE DEFENDANT: No, sir. Let's continue.
>
> THE COURT: You assured me he never laid his hands on you and touched you in any way?
>
> THE DEFENDANT: No, sir, he didn't.
>
> THE COURT: Other than the occurrence that took place in the cell block adjacent to my courtroom on the sixth floor here, you have been treated pretty well?
>
> THE DEFENDANT: Yes, sir.
>
> . . . .

>THE COURT: Do you believe you are mentally able to proceed with the hearing at this time?
>THE DEFENDANT: Yes, sir.

Id. at 9–11, 13.

At the end of the hearing, the Court entered the following findings concerning Neira's plea:

>THE COURT: Mr. Neira, based upon the plea you have entered in this case, based upon all the evidence I received at the hearing this morning, and all of the information I have available, the Court is going to make a finding at this time that you are fully capable and competent of entering an informed plea and that you are aware of the nature of the charges and the consequences of the plea. I will find that the plea of guilty you have entered this morning is one that has been entered into freely, and voluntarily, and knowingly. I will further find that there is an independent basis in fact that contains each of the essential elements of the offense to which you have entered the plea.
>I will accept your plea of guilty. I will find you guilty of the offense to which you have entered the plea, and I will enter a judgment of guilty on the record.

Id. at 38.

The probation officer who prepared the presentence investigation report (PSR) determined, "[b]ased upon a total offense level of 41 and a criminal history category of II, [Neira's] guideline imprisonment range [was] 360 months to life." PSR ¶ 25, ECF No. 73.

Neira's counsel did not object to the PSR. Obj., ECF No. 73-1. But he did explain that Neira served in the United States Army for approximately fifteen years and participated in military operations in Kosovo, Kuwait, and Iraq. Sent. Tr. 6–7, ECF No. 86.

The Court, after hearing the arguments of counsel, followed the recommendation of the parties in the plea agreement. Id. at 13. It departed below the guidelines and sentenced Neira to 192 months' imprisonment. J. Crim. Case 2, ECF No. 75.

The Fifth Circuit Court of Appeals granted a motion by Neira's appointed appellate counsel to withdraw and dismissed his appeal. J., ECF No. 88.

In his § 2255 motion, Neira asserts three claims.  Mot. to Vacate, ECF No. 91.  First, he maintains his counsel provided ineffective assistance when he failed to review the discovery materials with him or investigate his phone records.  Id. at 4.  Second, he avers his counsel was ineffective when he did not object to the PSR.  Id. at 7.  Finally, he concludes his plea was involuntary because he was threatened and distracted by a marshal before his plea hearing.  Id. at 5.  He asks the court to "reverse" his conviction.  Id. at 12.

## APPLICABLE LAW

A § 2255 motion "'provides the primary means of collateral attack on a federal sentence.'"  Pack v. Yusuff, 218 F.3d 448, 451 (5th Cir. 2000) (quoting Cox v. Warden, 911 F.2d 1111, 1113 (5th Cir. 1990)).  Relief under § 2255 is warranted for errors that occurred at trial or at sentencing.  Solsona v. Warden, F.C.I., 821 F.2d 1129, 1131 (5th Cir. 1987).  Before a court will grant relief, however, the movant must establish that (1) his "sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack."  United States v. Seyfert, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted).  Ultimately, the movant bears the burden of establishing his claims of error by a preponderance of the evidence.  Wright v. United States, 624 F.2d 557, 558 (5th Cir. 1980) (citing United States v. Kastenbaum, 613 F.2d 86, 89 (5th Cir. 1980)).  If the court concludes that the movant's motion is meritorious, it must "vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).

## ANALYSIS

A.  **Ineffective Assistance of Counsel**

Neira maintains his counsel provided ineffective assistance when he failed to review the discovery materials with him or investigate his phone records:

> Both my lawyers failed to show me or review with me any of the discovery in my case. They failed to investigate specific issues I raised with them. Specifically, I told them that phone records would disprove some of the government's allegations but Mr. Jewkes failed to investigate. They would not hear me out when I tried to tell them my side. I never fully understood my options. They both told me that I needed to plead guilty but did not explain why. At the time, I felt like I did not have the option to not plead guilty because my lawyers made it very clear to me that they would not defend me.

Mot. to Vacate 4, ECF No. 91. He also avers his counsel was ineffective when he did not object to the PSR. Id. at 7. He claims "there were things that he knew should have been corrected." Id.

A reviewing court analyzes an ineffective-assistance-of-counsel claim presented in a § 2255 motion under the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail, a movant must show (1) his counsel's performance was deficient and (2) the deficient performance prejudiced the defense. Strickland, 466 U.S. at 689–94. A failure to establish either prong of the Strickland test requires a finding that counsel's performance was constitutionally effective. Strickland, 466 U.S. at 697.

To establish deficient performance, a defendant must show that his counsel's assistance fell "'below an objective standard of reasonableness.'" United States v. Conley, 349 F.3d 837, 841 (5th Cir. 2003) (quoting Strickland, 466 U.S. at 688). Under the deficiency prong, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. In the context of a guilty plea, counsel's performance is deficient when his advice leaves the defendant unable "to make an informed and conscious choice to plead guilty." United States v. Cavitt, 550 F.3d 430, 441 (5th Cir. 2008).

8

Under this standard, courts must "presume that counsel satisfied their obligation to render competent advice at the time their clients considered pleading guilty." Padilla v. Kentucky, 559 U.S. 356, 372 (2010) (citing Strickland, 466 U.S. at 689).

"[T]o establish prejudice, a 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Wiggins v. Smith, 539 U.S. 510, 534 (2003) (quoting Strickland, 466 U.S. at 694). In the context of a guilty plea, a movant shows prejudice by establishing "that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

If the movant fails to prove one prong, the reviewing court need not analyze the other. See Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

### (1) Failure to Review Discovery

Neira claims his counsel provided ineffective assistance when they failed to review the discovery materials with him. Mot. to Vacate 4, ECF No. 91. But he waived the right to additional discovery when he signed the amended plea agreement. Am. Plea Agreement 4, ECF No. 65. And he admitted that the detailed factual basis—as alleged by the Government in both the amended plea agreement and the amended addendum—was true and correct. Am. Plea Agreement 6, 9, ECF No. 65; Am. Addendum 6, ECF No. 66. Additionally, he claimed, under oath at his plea hearing, that he had read and understood—and freely and voluntarily signed—the

9

amended plea agreement.  Plea Tr. 33, 34–35, ECF No. 85.  And he specifically acknowledged that by signing the amended plea agreement he had waived discovery.  Id. at 31.  He also admitted at his plea hearing that "he knowingly and intentionally conspired with others to possess with intent to distribute 500 grams or more of a mixture or substance containing . . . 2.54 kilograms in gross weight of methamphetamine.  Id. at 37.  Finally, he pleaded guilty to count two of the indictment.  Id.  By pleading guilty, he received the benefit of the Rule 11(c)(1)(B) agreement for a 192-month sentence instead of a guidelines sentence of 360 months to life.  Am. Addendum 5, ECF No. 66; PSR ¶ 25, ECF No. 73.

Notably, Neira fails to explain how a further review of the discovery materials by him would have changed the outcome of his case.  More importantly, he does not suggest he would not have pled guilty—and would have insisted on going to trial—but for his counsel's alleged omissions.  Hill, 474 U.S. at 59.  Hence, he has not shown his counsel's omission prejudiced his cause.  He is not entitled to § 2255 relief on this claim.

### (2) Failure to Investigate Telephone Calls

Neira maintains his phone records would have disproved some of the government's allegations.  Mot. to Vacate 4, ECF No. 91.  He does not, however, specify what the records would have shown and how they would have resulted in a different outcome.

Counsel has a duty to investigate the charges and evidence against his client.  Strickland, 466 U.S. at 690–91. "[C]ounsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case."  Id. at 690.

"A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."  United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989) (emphasis

added); cf. United States v. Glinsey, 209 F.3d 386, 393 (5th Cir. 2000) (stating in context of direct appeal that "[t]o establish his failure to investigate claim, [the defendant] must allege with specificity what the investigation would have revealed and how it would have benefitted him.").

Neira fails to allege with specificity what counsel's investigation into his telephone records would have uncovered. He does not explain how the investigation would have been advantageous to him, or how it would have resulted in a different outcome. His "conclusory allegations do not raise a constitutional issue." Ross v. Estelle, 694 F.2d 1008, 1012 (5th Cir. 1983).

Moreover, he has not suggested that he was unable to make an informed and conscious choice to plead guilty due to his counsel's failure to obtain and review his telephone records. Cavitt, 550 F.3d at 441. He has also not claimed that he would not have pled guilty—and would have insisted on going to trial—but for his counsel's alleged omissions. Hill, 474 U.S. at 59. Consequently, he has failed to satisfy both Strickland prongs. He is not entitled to § 2255 relief on this ground.

### (3) Failure to Object to the Presentence Investigation (PSR)

Neira further claims his counsel provided ineffective assistance when he failed to object to the PSR. Mot. to Vacate 7, ECF No. 91. He avers his "lawyer did not make any objections to the presentence report even though there were things that he knew should have been corrected." Id.

Once again, Neira fails to provide any explanation regarding what objections his counsel should have made to the PSR. See Ross, 694 F.2d at 1012 ("conclusory allegations do not raise a constitutional issue"). The facts contained in a PSR are generally considered reliable, and a court may adopt them without further inquiry unless the defendant presents competent

11

rebuttal evidence. United States v. Puig-Infante, 19 F.3d 929, 943 (5th Cir.1994). Such rebuttal evidence must demonstrate that the PSR information is "materially untrue, inaccurate or unreliable." United States v. Angulo, 927 F.2d 202, 205 (5th Cir.1991). A mere objection does not suffice as competent rebuttal evidence. Puig-Infante, 19 F.3d at 943. "When a petitioner argues that his . . . counsel rendered ineffective assistance by failing to introduce evidence to rebut a presentence investigation report, the petitioner must identify the missing evidence and demonstrate how that evidence casts doubt on the information set forth in the report." Araromi v. United States, No. 3:09-CR-3143-KC, 2014 WL 1652595, at *21 (W.D. Tex. April 23, 2014). Lacking any indication what objections Neira believes his counsel should have lodged, the Court cannot determine whether "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.

Moreover, to the extent Neira is attempting to raise a sentencing guideline issue under the guise of an ineffective assistance of counsel claim, he is not entitled to relief. A district court's technical application of the guidelines does not give rise to a constitutional issue. United States v. Segler, 37 F.3d 1131, 1134 (5th Cir. 1994). Consequently, a claim that a court erred in calculating a guideline level and a specific offense characteristic is not cognizable under § 2255. Id.

Neira is not entitled to § 2255 relief on this claim.

### B. Involuntary Plea

Neira asserts his plea was involuntary because he was threatened and distracted by a marshal before his plea hearing. Mot. to Vacate 5, ECF No. 91.

A court will uphold a guilty plea "if the plea was knowing, voluntary and intelligent." James v. Cain, 56 F.3d 662, 666 (5th Cir. 1995). A guilty plea is knowing, voluntary and

intelligent so long as a defendant is aware of "the maximum prison term and fine for the offense charged."  Ables v. Scott, 73 F.3d 591, 592 n.2 (5th Cir. 1996) (citing United States v. Rivera, 898 F.2d 442, 447 (5th Cir. 1990)).  A plea becomes involuntary if the defendant is "induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper[.]"  Brady v. United States, 397 U.S. 742, 755 (1970).

Neira acknowledged at his plea hearing that he understood the maximum prison term and fine he faced by pleading guilty to the offense.  Plea Tr. 17–18, ECF No. 85.  He agreed that his plea was not the result of any force, threats, or promises.  Id. at 15.  He promised the Court that his plea would be freely and voluntarily entered.  Id.  He admitted that "he knowingly and intentionally conspired with others to possess with intent to distribute 500 grams or more of a mixture or substance containing . . . 2.54 kilograms in gross weight of methamphetamine.  Id. at 37.

Neira discussed the confrontation with the Court at his plea hearing.  Id. at 9–13.  He rejected the opportunity afforded to him by the Court to take a recess.  Id. at 11.  He claimed he was "mentally able to proceed with the hearing."  Id. at 13.  Notably, he never claimed the perceived threats by the marshal induced his plea.

"Solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings."  Blackledge v. Allison, 431 U.S. 63, 73–74 (1977).  "[A] defendant ordinarily will not be heard to refute [his] testimony given at a plea hearing while under oath."  United States v. Cervantes, 132 F.3d 1106, 1110 (5th Cir. 1998) (citing United States v. Fuller, 769 F.2d 1095, 1099 (5th Cir. 1985)).  The Court will not now

permit Movant to disavow his prior statements concerning the voluntariness of his plea. The Court finds he is not entitled to § 2255 relief on this claim.

## EVIDENTIARY HEARING

A movant must "produce[ ] independent indicia of the likely merit of [his] allegations" to warrant an evidentiary hearing. United States v. Edwards, 442 F.3d 258, 264 (5th Cir. 2006) (quoting United States v. Cervantes, 132 F.3d 1106, 1110 (5th Cir. 1998)). "Once such independent evidence is presented, '[a] motion brought under 28 U.S.C. § 2255 can be denied without a hearing only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief.'" Cavitt, 550 F.3d at 442 (quoting United States v. Bartholomew, 974 F.2d 39, 41 (5th Cir. 1992)). When "the files and records of a case make manifest the lack of merit of a Section 2255 claim, the trial court is not required to hold an evidentiary hearing." United States v. Hughes, 635 F.2d 449, 450 (5th Cir. Unit B 1981).

Neira has failed to produce independent indicia of the likely merit of his allegations. The motion, files, and records in this case are adequate to dispose fully and fairly of Neira's claims. His cause requires no further inquiry on collateral review and an evidentiary hearing is not necessary.

## CERTIFICATE OF APPEALABILITY

A movant may not appeal a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." Id. § 2253(c)(2). In cases where a district court rejects a movant's constitutional claims on the merits, the movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v.

McDaniel, 529 U.S. 473, 484 (2000); see also United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (applying Slack to a certificate of appealability determination in the context of § 2255 proceedings). To warrant a certificate as to claims that a district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484.

The Court finds that Neira's motion fails because he has not identified a transgression of his constitutional rights or alleged an injury that would, if condoned, result in a complete miscarriage of justice. Additionally, it finds that reasonable jurists could not debate its reasoning for the denial of his claims on substantive or procedural grounds—or find that his issues deserve encouragement to proceed. Miller El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack, 529 U.S. at 484). It will not, therefore, issue a certificate of appealability.

## CONCLUSIONS AND ORDERS

The Court concludes that Neira has failed to meet his burden of establishing (1) his "sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack." Seyfert, 67 F.3d at 546. It also concludes that Neira is not entitled § 2255 relief. The Court further concludes that Neira is not entitled to a certificate of appealability. The Court accordingly enters the following orders:

**IT IS ORDERED** that Neira's "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (ECF No. 91) is **DENIED**, and his civil cause is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Neira is **DENIED** a **CERTIFICATE OF APPEALABILITY**.

**IT IS FURTHER ORDERED** that all pending motions in this cause, if any, are **DENIED AS MOOT**.

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

**IT IS SO ORDERED.**

**SIGNED this 27th day of August, 2021.**

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE